IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTIN MEDICAL SERVICES, INC., <br><br>     Plaintiff, <br><br> v. <br><br> RYAN WHITE C.A.R.E. ACT TITLE II COMMUNITY AIDS NATIONAL NETWORK, <br><br>     Defendant. <br><br>――――――――――――― <br><br> RYAN WHITE C.A.R.E. ACT TITLE II COMMUNITY AIDS NATIONAL NETWORK, <br><br>     Counterclaim Plaintiff, <br><br> v. <br><br> MARTIN MEDICAL SERVICES, INC., <br><br>     Counterclaim Defendant. | CIVIL ACTION NO. 1:05-cv-02056-PLF |

**LOCAL CIVIL RULE 16.3**
**REPORT TO THE COURT**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Civil Rule 16.3, Plaintiff/Counterclaim Defendant Martin Medical Services, Inc. ("MMS"), by and through its undersigned counsel, and Defendant/Counterclaim Plaintiff Ryan White C.A.R.E. Act Title II Community AIDS National Network ("TIICANN"), by and through its undersigned counsel, respectfully submit this joint Local Civil Rule 16.3 report.

I.  **STATEMENT OF THE CASE**

    A.  **Plaintiff/Counterclaim Defendant's Position:**

Since 2002, Plaintiff/Counter-Defendant, Martin Medical Services, Inc. ("MMS") has provided logistical event planning services for Defendant/Counter-Plaintiff Ryan White C.A.R.E. Act Title II Community AIDS National Network ("TIICANN") in regard to its National AIDS Drug Assistance Program ("ADAP") Educational Forum.

TIICANN has claimed that the ADAP Educational Forum is "recognized as the nation's premier ADAP event, providing invaluable programmatic, technical, clinical and legislative expertise to program participants. It also serves as an educational and networking vehicle for ADAP administrators, giving them the opportunity to interact and discuss pertinent issues while at the same time highlighting emerging trends and developments."

TIICANN held a National ADAP Educational Forum each year subsequent to 2002. In each year subsequent to 2002, MMS submitted a new proposal regarding TIICANN's National ADAP Educational Forum and, in each year subsequent to the 2002 proposal, MMS's proposal was accepted by TIICANN. Only the proposals which ultimately led to contracts in 2004 and 2005 are at issue in this present litigation.

On January 20, 2004, William E. Arnold, as agent for TIICANN accepted MMS's proposal to provide logistical and event planning services in regard to the 2004 National ADAP Educational Forum. The acceptance by William E. Arnold of the 2004 proposal created a binding contract between MMS and TIICANN and provided for the total compensation to TIICANN of $412,419.00. To date, TIICANN has paid only a portion of the amounts owed and presently owes an outstanding balance of $77,289.25.

As it had done in the past, MMS presented TIICANN with a bid proposal in regard to the 2005 National ADAP Educational Forum. On March 22, 2005, William E. Arnold, as agent for TIICANN executed the final page of MMS's proposal and created a binding contract between the parties. The total budget for the 2005 National ADAP Educational Forum was $257,678.00. To date, TIICANN has paid only a portion of the amounts owed and presently owes an outstanding balance of $51,203.60.

Subsequent to the 2005 National ADAP Educational Forum, the Washington Hilton—the site of the 2005 forum—began to demand payment from MMS. MMS informed TIICANN that it did not believe it was obligated to tender payment to the Washington Hilton as TIICANN had yet to honor its obligation to MMS. In essence, MMS was not required to pay third-parties until TIICANN paid MMS. In an attempt to resolve the dispute, TIICANN made a voluntary tender of monies directly to the Washington Hilton. To date, TIICANN has yet to discharge its legal obligations to MMS in regard to the 2005 contract.

**B.     Defendant/Counterclaim Plaintiff's Position:**

Defendant/Counterclaimant Ryan White C.A.R.E. Act Title II Community AIDS National Network ("TIICANN") is a non-profit corporation that, for a number of years, has held an annual National AIDS Drug Assistance Program ("ADAP") Educational Forum. Typically, the costs of holding the National ADAP Educational Forums are funded through unrestricted educational grants or donations made to TIICANN, through its non-profit status, by pharmaceutical manufacturing companies. Since 2002, TIICANN has provided Martin Medical Services, Inc. ("MMS") with the exclusive opportunity to provide the planning, organizational, and logistical support services required for the production of TIICANN's annual National ADAP Educational Forums.

TIICANN and MMS agreed to a proposed budget of $398,769.00 for the production of the 2004 National ADAP Educational Forum. From this proposed budget, MMS could receive a maximum of $363,769.00 for its services and to pay the various expenses associated with the conference; the remaining amount was to be paid to TIICANN for the resources and services it provided in connection with the event. Some funding commitments from the pharmaceutical manufacturing companies fell through for the 2004 National ADAP Educational Forum; however, TIICANN was able to pay MMS $277,629.75 towards the proposed budget for the 2004 conference.

Subsequent to the 2004 National ADAP Education Forum, TIICANN and MMS discussed the status of the remaining grants and donations and the potential balance owed towards the proposed budget. TIICANN and MMS agreed that much of the remaining balance was uncollectible from the pharmaceutical manufacturing companies and that, if TIICANN was able to collect an additional $57,500.00 from two specific pharmaceutical manufacturing companies, MMS would forgive any remaining amounts owed to it for the 2004 conference. TIICANN collected the additional $57,500.00, which it paid to MMS (raising the total paid to MMS for the 2004 conference to $335,129.75), and, additionally, TIICANN did not charge MMS rent for the space MMS was leasing in TIICANN's Washington, D.C. office for the entirety of 2004 and for nine months in 2005. Consequently, TIICANN does not owe any amount to MMS in connection with the 2004 National ADAP Educational Forum.

TIICANN and MMS agreed to a proposed budget of $257,678.00 for the production of the 2005 National ADAP Educational Forum, which was held from May 20, 2005 through May 22, 2005 at the Hilton Washington. From this budget, MMS could receive a maximum of $240,178.00 for its services and to pay the various expenses associated with the conference; the

remaining $17,500.00 was to be paid to TIICANN for the resources and services it provided in connection with the event. TIICANN, either directly or indirectly through MMS, received unrestricted educational grants and donations from pharmaceutical manufacturing companies and, through the use of these funds, made payments to MMS for the 2005 conference totaling $189,000.00. TIICANN was still in the process of collecting outstanding pledges and donations from pharmaceutical manufacturing companies to make the remaining payments to MMS after the 2005 conference.

However, in the summer of 2005, the Hilton Washington demanded payment from TIICANN for the outstanding balance of $66,602.06 owed to the Hilton Washington for the lodging, food, beverage, and other services it provided in connection with the 2005 National ADAP Educational Forum. The Hilton Washington threatened that, if the outstanding balance was not paid, it would charge the personal credit cards of conference attendees for expenses incurred through their attendance at the 2005 National ADAP Educational Forum and, on some occasions, carried through with this threat. Under its agreement with TIICANN and as reflected in the proposed budget for the event, MMS was responsible for ensuring the payment of the Hilton Washington; however, MMS failed to satisfy its legal obligations to the Hilton Washington. Therefore, rather than subject conference attendees to charges for the 2005 National ADAP Educational Forum, TIICANN made arrangements to pay the $66,602.06 balance to the Hilton Washington.

As a result, TIICANN made total payments to or on behalf of MMS in the amount of $255,602.06. However, under the proposed budget agreed to by MMS and TIICANN, MMS was only to receive a maximum of $240,178.00 in connection with the 2005 conference. Therefore, TIICANN does not owe any amount to MMS in connection with the 2005 National

ADAP Educational Forum. However, TIICANN is entitled to reimbursement from MMS of at least $15,424.06 for the amounts paid in excess of the maximum that MMS could have received for the 2005 National ADAP Educational Forum.

II.  **REPORT ON CONFERENCE OF PARTIES:**

The numbered paragraphs below correspond to the subsections contained in Local Civil Rule 16.3(c).

1. **Dispositive Motions**

TIICANN presently believes that all, or at least a portion of, MMS' claims may be subject to dispositive motion. Likewise, MMS presently believes that all, or at least a portion of, TIICANN's claims may be subject to dispositive motion.

2. **Joinder of Parties, Amendment Of Pleadings And Narrowing Of Issues**

The parties do not anticipate joining any additional parties; however, the parties propose that any motion to join additional parties shall be filed within sixty (60) days from the date of the scheduling conference. Any further amendment of pleadings will be made as allowed by the applicable rules of civil procedure and by order of the Court.

3. **Agreement To Magistrate Judge**

The parties do not request assignment to a magistrate judge.

4. **Possibility Of Settlement**

The parties believe that the issue of settlement is premature until at least after the completion of written discovery.

5. **Alternative Dispute Resolution**

The parties are aware of the Court's alternative dispute resolution (ADR) procedures and have considered the factors listed in LCvR 16.3(c)(5). The parties believe that ADR procedures

should be used after the completion of written discovery and request that mediation before Magistrate Judge Facciola be held after the completion of written discovery. At the appropriate time, the parties will submit a written request to the Court asking that such a mediation be scheduled.

6. **Time For Filing Of Dispositive Motions**

In the event a dispositive motion is not filed and granted earlier, the parties propose that dispositive motions be filed within sixty (60) days after the close of discovery. The parties propose that oppositions to dispositive motions be due thirty-five (35) days after service of the dispositive motion, with replies due twenty-one (21) days thereafter.

7. **Initial Disclosures**

The parties stipulate that they shall dispense with the initial disclosures required under Rule 26(a)(1) of the Federal Rules of Civil Procedure.

8. **Extent Of Discovery**

The parties expect to serve admission requests, interrogatories, and document requests, and to take depositions. The parties propose that discovery should be completed within twelve (12) months of the initial Scheduling Conference that is currently set for March 8, 2006.

The parties propose ten (10) depositions per side. The parties propose no departure from the presumptive limits on interrogatories.

The parties believe that a protective order will be required to safeguard confidential and otherwise sensitive information concerning its records and documents. The parties anticipate that they should be able to agree on the terms of such an order and will submit a proposed protective order to the Court for approval and entry.

9. **Experts**

The parties propose that proponent's experts be identified within 180 days of the initial Scheduling Conference, that opponent's experts be identified within forty-five (45) days thereafter, and that any rebuttal experts be identified within forty-five (45) days of opponent's identification of its experts. The parties do not propose further modification of the requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure.

### 10. Class Actions

This is not a class action.

### 11. Bifurcation

The parties propose that there should not be bifurcation of the trial and/or discovery.

### 12. Pretrial Conference

The parties propose that the Court schedule a Pretrial Conference, if one is necessary, after the Court rules on any dispositive motions.

### 13. Trial Date

The parties propose that it is too early to set a firm trial date, and that a trial date should be set at the Pretrial Conference.

Respectfully submitted,

| | |
|---|---|
| By: /s/ | By: /s/ |
| Christopher A. Glaser, DC Bar No. 463583 | David A. Rosenberg, DC Bar No. 433405 |
| BEAN, KINNEY & KORMAN, P.C. | FORD & HARRISON LLP |
| 2000 North 14th Street, Suite 100 | 1300 19th Street, N.W., Suite 700 |
| Arlington, VA 22201 | Washington, DC 20036 |
| Telephone: (703) 525-4000 | Telephone: (202) 719-2000 |
| Facsimile: (703) 527-2207 | Facsimile: (202) 719-2077 |
| *Counsel for Plaintiff/Counterclaim Defendant* | *Counsel for Defendant/Counterclaim Plaintiff* |

DC:59077.1